UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| MADISON TOOL AND DIE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:06-cv-0074-JDT-WGH |
| | ) | |
| | ) | |
| ZF SACHS AUTOMOTIVE OF AMERICA, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO
STRIKE JURY DEMAND (Docs. No. 21 & 29)[1]**

This matter comes before the court on Defendant's Motion for Summary
Judgment and Motion to Strike Jury Demand.  (Docs. No. 21 & 29.)  Plaintiff Madison
Tool and Die, Inc. ("Madison") filed this cause in Jefferson County, Indiana, Circuit Court
alleging that Defendant ZF Sachs Automotive of America, Inc. ("Sachs") breached a
contract under which Madison was to supply parts to Sachs.  On May 11, 2006,
Defendant removed this case to United States District Court for the Southern District of
Indiana.  (Doc. No. 1.)  (The parties are diverse and the amount in controversy exceeds
$75,000.)   On March 22, 2007, Defendant filed a motion for summary judgment alleging
that the Indiana Statute of Frauds ("Statute of Frauds" or "Statute") rendered the alleged
oral contract unenforceable and that promissory estoppel does not take this oral

---

[1]  This Entry is a matter of public record and will be made available on the court's web
site.  However, the discussion contained herein is not sufficiently novel to justify commercial
publication.

contract or promise outside the operation of the Statute.  (Doc. Nos. 21 & 22.)  Before Plaintiff had responded to Defendant's Motion for Summary Judgment, Defendant filed a Motion to Strike Jury Demand on May 17, 2007, on the basis that promissory estoppel is an equitable doctrine and, thus, that Plaintiff is not entitled to a jury trial.  (Doc. Nos. 29 & 30.)  On May 23, 2007, Plaintiff filed a response to the Motion for Summary Judgment.  (Doc. No. 33.)  On May 31, 2007, it moved for an extension of time until June 9, 2007, to respond to the Motion to Strike Jury Demand.  (Doc. No. 37.)  The court granted this motion June 1, 2007.  (Doc. No. 38.)  Defendant filed its Reply to the Motion for Summary Judgment on June 6, 2007.  (Doc. No. 40.)  The Motion for Summary Judgment is fully briefed and the time for Plaintiff to file a response to the Motion to Strike Jury Demand has passed.  Therefore, the court rules as follows.

## I.    Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999).  In order to survive a motion for summary judgment, a party must "set forth facts showing that there is a genuine issue for trial."  Fed. R. Civ.

P. 56(e).  These facts must be based on admissible evidence.  *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007).  It is with this standard in mind that the court presents the following facts.

## II.     Facts for Summary Judgment

In February 2001, Defendant Sachs, an automotive supply company unhappy with a current supplier, began searching for a replacement.  (Def.'s Ex. 1; Reed Aff. ¶ 6; Sparks Aff. ¶ 5.)  Bruce Jones,[2] a buyer for Sachs, contacted Madison, a tool and die company, through a middleperson, Celeste Reed, about moving the business to Madison quickly.  (Reed. Aff. ¶¶ 9-10.)  A meeting was arranged between Jones, Reed, and a representative from Madison.  (*Id.*)  At this meeting, Jones told Madison it was the only company with which he was working, that Madison "[was] receiving the work," and that he needed production to begin thirty days after the necessary equipment was in place.  (Sparks Aff. ¶ 6; *accord* Reed Aff. ¶ 12.)  Although this would be an extremely short time period to begin production, Madison was willing to attempt this difficult task because of the amount of business involved, the length of the contract term, and the "assurance that [Madison] had the work".  (Sparks Aff. ¶ 8; *accord* Reed Aff. ¶ 15.)

---

[2]  Plaintiff referenced a letter written by Bruce Jones to an agent of Defendant in its response to the Motion to Dismiss.  Defendant argues that this letter is inadmissible hearsay because it was written after Jones left the Defendant as an employee.  Although nothing in Jones's letter would change the outcome of this motion, Defendant is correct that there is no hearsay exception which would make this letter admissible.  *Cf. Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 622-23 (7th Cir. 2003).

Madison's quoted prices were based on a three-year contract (Def.'s Ex. 3.), but no written contract was entered into by the parties. Madison's March 2, 2001, quote contained a description of the item to be manufactured, a quantity and a price based on a three year contract. (*Id.*) The quote also promised delivery in eight to ten weeks and a payment term of net thirty days. (*Id.*)

Madison did not have the necessary equipment in its facilities to make the parts for Sachs. Based on the promise of work, Madison, with Jones's knowledge and at his direction, purchased a piece of heavy equipment called a Euroturn 6/32 in the summer of 2001. (Reed Aff. ¶¶ 17-18; Sparks Aff. ¶ 10.) With financing, this machine cost roughly $415,000. (Def.'s Ex. 5.) That summer Madison made test parts for Sachs and in the fall Madison was told that production would begin in January 2002. (Def.'s Ex. 1, at 1.) However, as Madison describes the situation, it was in a "holding pattern" for the next three years, constantly being told to be patient and that production would start soon. (Sparks Aff. ¶ 16.) Finally, in May 2004, Madison was informed it would not be a supplier to Sachs. (Def.'s Ex. 1, at 3.)

Madison originally filed this suit in Jefferson Circuit Court, but the case was removed to United States District Court for the Southern District of Indiana on May 11, 2006. On October 11, 2006, Madison provided a preliminary estimate of its damages, which includes the cost of the Euroturn machine, tooling, and labor. Madison also asked for lost profits of $300,000.

-4-

III.    **Discussion**

Defendant first argues that Plaintiff cannot show that there was anything more between the parties than an agreement to agree.  In Indiana, "[t]he law is well-established that a mere agreement to agree at some future time is not enforceable." *Wolvos v. Meyer*, 668 N.E.2d 671, 674 (Ind. 1996).  Defendant contends that at the time Plaintiff purchased the Euroturn machine, "it was not approved to supply parts to ZF Sachs."  (Def.'s Br. 9.)  It argues that Madison was, thus, merely submitting quotes with the hope of later concluding an agreement.

The Indiana courts have explained that there are two questions which guide a determination of whether a contract is enforceable or merely an agreement to agree. First the court asks whether the parties intended to be bound by the agreement or did they only intend to be bound after executing a later document?  *Epperly v. Johnson*, 734 N.E.2d 1066, 1071 (Ind. Ct. App. 2000) (citing *Wolvos*, 668 N.E.2d at 675).  Next the court examines whether the agreement lacked "such essential terms as to render it unenforceable."  *Id.*

The facts taken in a light most favorable to Plaintiff as non-moving party show that this was more than an agreement to agree.  A trier of fact could determine that the parties intended to be bound.  According to Sparks, Jones told him that the business was already Madison's.  (Sparks Aff. ¶ 8.)  Although there were still administrative steps, these were presented as trivial matters that would be quickly disposed.  (*Id.* ¶ 12.)  Neither did the agreement lack essential terms.  There was a duration agreed to by

the parties (three years), a price for specific parts, delivery terms, and payment terms. (Def.'s Ex. 3.)  This is enough to bind the parties even if there were still minor gaps to fill.  *See Wolvos*, 668 N.E.2d at 676.

Even if Plaintiff was not "approved" as a supplier, this does not mean what the parties had was an agreement to agree.  Defendants have presented no evidence as to how this approval might affect a supplier relationship.  Assuming that no supplier can sell parts to Defendant until it is approved, this sounds merely like a condition precedent.  *See Ind. State Highway Comm'n v. Curtis*, 704 N.E.2d 1015, 1018 (Ind. 1998).  In other words, Defendant was not bound by the contract until Plaintiff satisfied this condition.  *Id.*  But that does not mean that the contract is too indefinite or an agreement to agree; once Plaintiff satisfies the condition precedent, the parties are bound.  *Cf. Kokomo Veterans, Inc. v. Schick*, 439 N.E.2d 639, 645 (Ind. Ct. App. 1982) ("The existence of a condition precedent does not by itself destroy mutuality merely because a contract is unenforceable at the time it is signed since the contract will ripen into a mutually enforceable obligation upon performance of the condition. . . . A contract need only be reasonably definite and binding as to its material terms.").  Defendants do not argue that Plaintiff ultimately failed to satisfy this condition.  Assuming Plaintiff's facts, this was not an agreement to agree.

Next, Defendant argues that the Statute of Frauds operates to make the contract unenforceable.  The parties agree that this promise falls within both Indiana's version of the Uniform Commercial Code's Statute of Frauds for goods sold of a value greater than $500, *see* Ind. Code § 26-1-2-201(1), and the Indiana Statute of Frauds for agreements

-6-

which cannot be performed within one year of making the agreement, *see id.* § 32-21-1-1-1(b)(5).  In Indiana, an oral promise which falls within the Statute of Frauds may still be enforced if the doctrine of promissory estoppel applies.  *Brown v. Branch*, 758 N.E.2d 48, 51 (Ind. 2001).  Plaintiff argues that the doctrine of promissory estoppel takes this promise outside of the operations of the Statue of Frauds, thus the promise is enforceable.

The Indiana Supreme Court has explained that promissory estoppel consists of five elements.  They are: "(1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise."  *Id.* at 52 (citing *First Nat'l Bank of Logansport v. Logan Mfg. Co., Inc.*, 577 N.E.2d 949, 954 (Ind. 1991)).

When using the doctrine of promissory estoppel to overcome the Statute of Frauds, there is a tough standard for this fifth "injustice" element.  The Indiana Supreme Court, adopting the language of an Indiana Court of Appeals case has stated:

> [I]n order to establish an estoppel to remove the case from the operation of the Statute of Frauds, the party must show [] that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights which the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss.
>
> In other words, neither the benefit of the bargain itself, nor mere inconvenience, incidental expenses, etc. short of a reliance injury so substantial and independent as to constitute an unjust and unconscionable injury and loss are sufficient to remove the claim from the operation of the Statute of Frauds.

*Id.* (quoting *Whiteco Indus., Inc. v. Kopani*, 514 N.E.2d 840, 845 (Ind. Ct. App. 1987) (alternations in original); *accord Coca Cola Co. v. Babyback's Int'l, Inc.*, 841 N.E.2d 557, 569 (Ind. 2006).

The parties assume for the purposes of this summary judgment motion that the first four elements of promissory estoppel are satisfied; determining whether an "unjust and unconscionable injury and loss" has occurred is the heart of the matter before the court. This determination poses some difficulty because, as the Supreme Court in *Coca Cola* explained, "[t]o separately require such independence from the benefit of the bargain, has not to our knowledge been specifically implemented in Indiana case law." *Id.* In other words, there is no example in case law of the Indiana courts applying this standard and finding that promissory estoppel acts to take a promise outside the statute of frauds.[3]

The courts have repeatedly said, however, that the standard in Indiana is higher than the standard necessary to remove a promise from the Statute of Frauds under section 139 of the Restatement of Contracts (Second). *Coca-Cola*, 841 N.E.2d at 569; *Whiteco*, 514 N.E.2d at 845. Section 139(1) of the Restatement provides:

---

[3] That is not to say that there are not examples of cases where the Indiana Court of Appeals has found that promissory estoppel acts to take a promise outside the statute of frauds. *See Hardin v. Hardin*, 795 N.E.2d 482 (Ind. Ct. App. 2003); *Tincher v. Greencastle Fed. Sav. Bank*, 580 N.E.2d 268 (Ind. Ct. App. 1991). However, these cases do not consider "such a separate requirement that the reliance injury be independent." *Coca Cola*, 841 N.E.2d at 570. In both these cases no transfer was sought. Given the Supreme Court's adoption of the "independent" injury prong in *Brown* and its reiteration in dicta in *Coca Cola*, the courts that ignored that prong may have incorrectly applied the law and their cases will not be addressed in this entry.

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise.

The Indiana courts seem to agree with this concept in theory; where they disagree with the Restatement is in the Restatement's standard for "avoiding injustice."  *Coca-Cola*, 841 N.E.2d at 569; *Whiteco*, 514 N.E.2d at 845.  Section 139(2) of the Restatement lists the factors to determine whether injustice can be avoided only by enforcing the promise. These are:

> (a) the availability and adequacy of other remedies, particularly cancellation and restitution;
>
> (b) the definite and substantial character of the action or forbearance in relation to the remedy sought;
>
> (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;
>
> (d) the reasonableness of the action or forbearance;
>
> (e) the extent to which the action or forbearance was foreseeable by the promisor.

Indiana courts require "a reliance injury so substantial and independent as to constitute an unjust and unconscionable injury and loss."  The court looks to two Indiana cases applying this test.

In *Whiteco Industries v. Kopani*, 514 N.E.2d 840 (Ind. Ct. App. 1987), the Court of Appeals of Indiana reversed a judgment on the evidence for plaintiffs because

plaintiffs failed to show that promissory estoppel or constructive fraud should be used to render the Statute of Frauds inapplicable.  Plaintiffs were employees of defendant, a theater, that promised plaintiffs year-long, renewable employment.  *Id.* at 842.  The theater, not performing as well as hoped, let plaintiff employees go after a few months of employment.  *Id.*  The employees urged upon the court several factors to avoid the Statute of Frauds through a theory of promissory estoppel, including that the employees gave up their existing employment, that they moved to Indiana from other states, and that two of the employees purchased homes in Indiana.  *Id.* at 843.  (Defendant did, however, pay for house hunting trips to Indiana and moving expenses from their previous homes.  *Id.* at 842.)

In response, the Indiana Court of Appeals fashioned its language of "a reliance injury so substantial and independent as to constitute an unjust and unconscionable injury and loss."  *Id.* at 845.  The court found that the injuries of the employees did not rise to a level to put the promise outside the operation of the Statute.  As the court stated:  "The consequences relied upon by them are the kind of adverse consequences which normally attend the involuntary termination of someone's employment."  *Id.* at 846.

In *Brown v. Branch*, 758 N.E.2d 48 (Ind. 2001), the Indiana Supreme Court reversed a judgment awarding a house to the plaintiff.  Defendant boyfriend proposed marriage to plaintiff girlfriend and promised to convey his home to her if she moved from Missouri to Indiana.  *Id.* at 50.  The girlfriend dropped out of school in Missouri, quit her job and moved to Indiana.  *Id.*  When the relationship ended, she sued for the home.  *Id.*

-10-

The Indiana Supreme Court held that promissory estoppel did not take the promise outside the operation of the Statute of Frauds, which applies to all sales of real estate. *See* Ind. Code § 32-21-1-1(4).

The court adopted the language of *Whiteco* and noted that "while it is true that the doctrine of promissory estoppel may remove an oral agreement from the operation of the Statute of Frauds, it is also true that the party asserting the doctrine carries a heavy burden establishing its applicability." *Id.* at 52. The court held that plaintiff had not "suffered an 'unjust and unconscionable injury and loss.'" *Id.* at 53. In making this determination, the court compared her situation to one of employment where giving "independent consideration" operates to take an employment at will situation to one where termination must be for good cause. In that situation, "neither moving one's household to a new location nor the mere relinquishment of an existing employment are sufficient to constitute independent consideration." *Id.* (quoting *Whiteco*, 514 N.E.2d at 843-44). The court explained "'[t]he reason for this view is that in moving and/or giving up her prior job, the employee is merely placing herself in a position to accept the new employment. . . . [S]he would have had to do the same things in order to accept the job on any basis . . . .'" *Id.* (quoting *Wior v. Anchor Indus.*, 669 N.E.2d 172, 176 (Ind. 1996)). The court found the situations appropriately analogous to hold that plaintiff had not suffered an unjust and unconscionable injury and loss. *Id.* The court admitted that plaintiff "was inconvenienced as well as denied the benefit that [defendant's] promise was intended to confer" but this is not enough to demonstrate a sufficiently unjust and unconscionable injury and loss. *Id.*

-11-

Recently, in *Coca-Cola Co. v. Babyback's Int'l, Inc.*, 841 N.E.2d 557 (Ind. 2006), the Indiana Supreme Court in dicta broke down the elements of the necessary injury to avoid the operation of the Statute as such: "the reliance injury must be not only (1) independent from the benefit of the bargain and resulting incidental expenses and inconvenience, but also (2) so substantial as to constitute an unjust and unconscionable injury." *Coca Cola*, 841 N.E.2d at 569. The court noted that this independence prong has never been applied to avoid the Statute and that cases that have applied promissory estoppel to the Statute have done so without addressing this prong. *Id.* 569-70.

Plaintiff argues that the reliance injuries that it suffered in this case are of the type contemplated by the Indiana courts to take the promise outside the operation of the Statute of Frauds; what it suffered is an unjust and unconscionable loss. According to Plaintiff, it was assured that it had the business with Defendant and based on that promise went and purchased extremely expensive heavy equipment for which it had no other use. According to the initial statement of special damages submitted by Plaintiff to the court, this machine with financing totaled over $400,000.

Sachs argues that the injuries in this case satisfy neither the independence prong nor the substantialness prong as described in *Coca-Cola*. First, Sachs argues that the injuries alleged by Plaintiff are not independent from the benefit of the bargain and resulting incidental expenses. The reliance damages resulting from purchasing the Euroturn is, of course, independent of the benefit of the bargain; however, Sachs claims the expense is "incidental to the production of parts that Madison wanted to sell to ZF

-12-

Sachs." (Def.'s Br. 6.)  Plaintiff disagrees with this characterization arguing: "If Defendant is asserting . . . that Madison Tool's losses, as discussed herein, are all merely 'incidental' or were simply 'inconveniences,' it demonstrates a significant lack of appreciation by Sachs of scale and context." (Pl.'s Br. 8.)  Sachs in its reply reiterates its notion that "incidental expenses" means expenses "incidental to the bargain—regardless of amount—and includes precisely the type of harm Madison claims." (Def.'s Reply Br. 3.)

Defendant's notion of incidental expenses must be incorrect.  If the court were to say that all expenses "incidental to the bargain" regardless of amount could not constitute a sufficient reliance injury, the doctrine of promissory estoppel would never work to save a plaintiff from an unjust and unconscionable loss.  Every reliance injury can be characterized as "incidental to the bargain" otherwise it is not a reliance injury. But Indiana courts have reiterated too many times that promissory estoppel may be used to take a promise outside the statute of frauds for the exception to be meaningless.

The court imagines that in the buyer-seller relationship the Indiana courts meant incidental expenses "incidental to the breach" similar to how it is used in section 26-1-2-710 of the Indiana Code.  According to the Code: "Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach." Ind. Code § 26-1-2-710.  Framing the incidental damages as incidental to the

-13-

breach makes sense because they are the type of costs that are associated with every

failed relationship regardless of whether a long term supply agreement was made. *See*

*Brown*, 758 N.E.2d at 53.

Defendant cites *Ohio Valley Plastics, Inc. v. Nat'l City Bank*, 687 N.E.2d 260, 264

(Ind. Ct. App. 1997) to bolster its claim that its "incidental to the bargain" notion is what

Indiana courts have in mind.  In *Ohio Valley Plastics* the Indiana Court of Appeals said:

> The Borrower also suffered incidental or reliance damages including, 1)
> lost business opportunities, 2) costs associated with delaying business
> plans dependent upon the purchase, 3) damage to Borrower's business
> reputation, the 4) costs of stationery which was unusable, and 5) other out
> of pocket expenses.  Nevertheless, we conclude, as a matter of law, that
> these damages, even when aggregated, fail to constitute a substantial and
> independent injury sufficient to remove Borrower's claim from the
> operation of the Statute of Frauds.

*Id.*  This passage, in itself, does nothing to support Defendant's position.  Both

incidental and reliance damages are included in the list.  The court did not explain which

was which or why these damages did not constitute a substantial and independent

injury.  Perhaps while independent, they were not substantial.  Given the fact that

Defendant's definition would destroy any path allowing promissory estoppel to remove a

promise from the operation of the Statute, the court is confident that the cost of the

Euroturn machine is sufficiently "independent from the benefit of the bargain and

resulting incidental expenses and inconvenience" to remove the promise from the

operation of the Statute.

-14-

The court is also convinced that Plaintiff has shown that the reliance injury was substantial enough to render the injury unjust and unconscionable.  Defendant wants to compare Plaintiff's injuries to those in *Whiteco* and *Brown*, but neither comparison demonstrates that as a matter of law Plaintiff has not suffered an injury sufficient to take the promise outside the Statute of Frauds.  This case can be distinguished from both *Whiteco* and *Brown*.  First, the reliance injuries in *Whiteco* and *Brown* were both of a matter of inconvenience and not definite.  The employees and girlfriend gave up a situation in one place for a situation in another place.  Comparison of these situations for the purposes of damages would be relatively difficult.  Further, for the court to recognize this inconvenience as a means to invalidate the Statute of Frauds would invite a host of litigation on a variety of relationships and promises for which the Statute of Frauds generally requires a writing.   This inconvenience attends almost every regretted choice in life regardless of whether the party relied on a promise to make it.

Sachs attempts to lump this case in with *Whiteco* and *Brown* because "Madison's alleged injuries here are of the type generally associated with a supplier's failure to win potential business from a customer."  (Def.'s Br. 7.)  The court disagrees. Sachs has presented no evidence for this suggestion that manufacturing companies will commonly spend $400,000 on special equipment to bid for potential business worth no more than $100,000 of profit per year over the course of three years.  Sachs flatters itself if it believes many companies would invest this kind of capital for a chance at its business. On the other hand, Madison presented two affidavits stating that Madison was in no position make this kind of investment on a dice roll.  (*See* Reed Aff. ¶ 19; Sparks Aff. ¶

11.)  The reliance in this case was substantial and definite.  Unlike *Whiteco* and *Brown*, this is may be a case where there is a reliance injury so unjust and unconscionable so as to remove the promise from the operation of the Statute of Frauds.  For this reason, the court **DENIES** Sachs's Motion for Summary Judgment.

## IV.     Motion to Strike Jury Demand

Defendant also asks the court to strike Plaintiff's jury demand, and Plaintiff did not file a response to this request.  Whether a plaintiff is entitled to a jury trial is a matter of federal procedural law rather than state substantive law.  *Simler v. Conner*, 372 U.S. 221, 222 (1963); *Int'l Fin. Serv. Corp. v. Chromas Tech. Canada, Inc.*, 356 F.3d 731, 735 (2004).  According to Rule 38(a) of the Federal Rules of Civil Procedure: "The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate."  No statute of the United States applies to this case, but the Seventh Amendment to the Constitution provides:

> In suits at common law, where the value in controversy shall exceed
> twenty dollars, the right of trial by jury shall be preserved, and no fact tried
> by a jury, shall be otherwise reexamined in any court of the United States,
> than according to the rules of the common law.

Therefore, whether Plaintiff is entitled to a jury trial depends on whether the claim it makes is legal or equitable as determined by federal law.  *Simler*, 372 U.S. at 610.

The Seventh Circuit has taught that this is a two part analysis.  First the court must "'compare the . . . action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.  Second, we examine the remedy sought and determine whether it is legal or equitable in nature.'"  *International Financial*, 356 F.3d at 735 (quoting *Tull v. United States*, 481 U.S. 412, 417-18 (1987)).  It is the second prong which is the most important.  *Id.* (citing *Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 42 (1989)).

Defendants cite *Merex A.G. v. Fairchild Weston Systems, Inc.*, 29 F.3d 821 (2d Cir. 1994), which applied this test to the issue of promissory estoppel and the Statute of Frauds.  Looking at the first prong, the Second Circuit determined that the historical analysis was inconclusive as to whether promissory estoppel was legal or equitable.  However, the court stated that when used to avoid the harsh results of a legal rule like the Statute of Frauds it clearly appears equitable.  The court stated:

> It is clear, however, that both law and equity exert gravitational pulls on the doctrine, and its application in any particular case depends on the context in which it appears.  For example, where a plaintiff sues for contract damages and uses detrimental reliance as a substitute for consideration, the analogy to actions in assumpsit (law) is compelling.  By contrast, when the plaintiff uses promissory estoppel to avoid a draconian application of the Statute of Frauds, the pull of equity becomes irresistible.

*Id.* at 825.

For the second prong, the court noted that plaintiff sought expectation damages which is a legal remedy.  But the court found this of little import because this attempt to collect expectation damages was inappropriate under promissory estoppel; the theory

-17-

was undeniably equitable and thus the plaintiff should be limited to, as the restatement put it, "relief 'as justice requires.'" *Id.* at 826 (citing Restatement (Second) of Contracts § 139(1)).  Thus, the remedy sought was actually equitable and the plaintiff was not entitled to a jury trial.

This court is persuaded by the Second Circuit's analysis.  When, as in this case, promissory estoppel is being used to avoid a harsh result of a legal rule like the Statute of Frauds, it acts very much like equity.  Further, while Plaintiff in this case seeks expectation damages, it is clear that because Madison is appealing to equity that it should be limited to equitable remedies.  *Cf. Ohio Valley Plastics*, 687 N.E.2d at 264 (citing *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 121-22 (Ind. 1994)) ('[O]ur courts have permitted the recovery of reliance damages under the doctrine of promissory estoppel even where a Statute of Frauds operates to render an oral agreement unenforeceable.").  For these reasons, the motion to strike Plaintiff's demand for a jury trial is **GRANTED**.

## V.    Conclusion

For the purposes of this motion, the court assumed that Defendant made an oral promise to the Plaintiff and that based on this promise and Defendant's specific urging, Plaintiff purchased an expensive piece of machinery.  Plaintiff is prohibited from getting the benefit of the bargain because of the Statute of Frauds; however, the doctrine of promissory estoppel might protect its reliance interests because it may have suffered an unjust and unconscionable injury and loss.  For this reason, the Motion for Summary

-18-

Judgment is **DENIED**.  However, because use of promissory estoppel to defeat the Statute of Frauds sounds in equity, Defendant's motion to strike Plaintiff's demand for jury trial is **GRANTED**.  A telephone conference will be set through a separate notice in order to select a mutually convenient bench trial date.

ALL OF WHICH IS ENTERED this 7th day of August 2007.


John Daniel Tinder, Judge
United States District Court


Copies to:

Magistrate Judge William G. Hussmann, Jr.

Michael R. Limrick
MCTURNAN & TURNER
mlimrick@mtlitigation.com

Allen C. Platt III
WYATT TARRANT & COMBS LLP
aplatt@wyattfirm.com

Wayne C Turner
MCTURNAN & TURNER
wturner@mtlitigation.com